# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| TRANE U.S., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CV-338-TLS |
| | ) | |
| PAUL H. PLAZEK, JODY SELVAGE, | ) | |
| BRUCE A. MERRYMAN, | ) | |
| JOHN W. GILBERT, and BUILDING | ) | |
| TEMPERATURE SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Jody Selvage's Motion to Modify Temporary Restraining Order [ECF No. 47], filed on November 17, 2010. Defendant Selvage objects to the continuing validity of one section of the Stipulated Temporary Restraining Order [ECF No. 21], which was entered on December 8, 2009, pursuant to the parties' agreement, extended pursuant to the parties' Joint Motion to Continue Preliminary Injunction Hearing, Extend Stipulated Temporary Restraining Order, and Extend Discovery Deadlines [ECF No. 24], and extended again by the Court's Order on February 5, 2010 [ECF No. 38]. For the reasons discussed below, the Court grants Defendant Selvage's Motion to Modify Temporary Restraining Order.

## BACKGROUND

The Plaintiff, Trane U.S., Inc., filed suit against four Defendants — Paul H. Plazek, Jody Selvage, Bruce A. Merryman, and John W. Gilbert — on November 25, 2009, in the Allen County Circuit Court, Allen County, Indiana [ECF No. 1]. On December 1, 2009, the Defendants removed the case to federal court under diversity jurisdiction [ECF No. 4], and on November 16, 2010, the

Plaintiff was granted leave to file an Amended Complaint naming Building Temperature Solutions, LLC, as a Defendant [ECF No. 46].

All four original Defendants were formerly the Plaintiff's employees. All four original Defendants left employment with the Plaintiff in early November 2009, and subsequently began employment with Building Temperature Solutions, LLC.

In its Complaint and Amended Complaint, Plaintiff alleges breach of contract, misappropriation and misuse of trade secrets, conversion, breach of fiduciary duty, computer trespass, and tortious interference with contractual relations and business expectancy. Specifically with reference to Defendant Selvage and this Motion to Modify Temporary Restraining Order, the Plaintiff alleges that Selvage, as a condition of his employment with the Plaintiff, entered into a restrictive covenant with the following provision:

> Customer Non-Solicitation. For 12 months following the end of his/her employment with the Company, for whatever reason, **Employee agrees not to directly or indirectly attempt to sell to any Restricted Customer any goods or services competitive with those offered for sale by the Company during the 12 months prior to termination of his/her employment.**

(First Am. Verified Compl. ¶ 26, ECF No. 46.) "Restricted Customer" was defined in the restrictive covenant as "any individual or entity for whom/which the Company provides or has provided services or products or has made a proposal to provide services or products and with whom/which the Employee had contact on behalf of the Company during the 18 months preceding the end of Employee's employment by Company." *Id.* Defendant Selvage admits signing this covenant. (Defendants' Answer and Affirmative Defenses to Pl.'s First Am. Compl. ¶ 26, ECF No. 67.)

On December 8, 2009, the parties submitted a Stipulated Temporary Restraining Order ("the TRO"), which the Court granted [ECF No. 21]. With respect to Defendant Selvage, the TRO provided as follows:

> Defendant Selvage is enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Defendant Selvage's new business and/or employer, until this Court may conduct a preliminary injunction hearing and thereafter until further order of this Court, as follows:
> (a) from attempting to sell to any individual or entity for which Trane provides or has provided services or products, or has made a proposal to provide services or products, and with whom/which Selvage had contact on behalf of Trane during the 18 months preceding his resignation, any goods or services competitive with those offered for sale by Trane during the 18 months prior to Selvage's resignation

(TRO ¶ 5, ECF No. 21.) By its terms, the TRO was to be in effect until a hearing on the Plaintiff's Motion for Preliminary Injunction, scheduled for December 18, 2009. But pursuant to the parties' Joint Motion to Continue Preliminary Injunction Hearing, Extend Stipulated Temporary Restraining Order, and Extend Discovery Deadlines [ECF No. 24], the Court extended the TRO until completion of the preliminary injunction hearing and ruling on the Plaintiff's Motion for Preliminary Injunction [ECF No. 25]. Discovery commenced in January 2009, and by the parties' agreement the Court extended the TRO [ECF No. 38], denying without prejudice the Motion for Temporary Restraining Order and Motion for Preliminary Injunction [ECF No. 2]. The TRO remains in effect.

On November 17, 2010, Defendant Selvage filed this Motion to Modify Temporary Restraining Order [ECF No. 47], arguing that by its terms his restrictive covenant with the Plaintiff expired one year after the termination of his employment, and as such the relevant portion of the TRO should be vacated. The Plaintiff filed a response to Defendant Jody Selvage's Motion to

Modify Temporary Restraining Order on December 6, 2010 [ECF No. 49], asking leave to file a supplemental response after the deposition of Defendant Selvage. Subsequently, the parties filed a Joint Motion to Stay Briefing on Defendant Jody Selvage's Motion to Modify Temporary Restraining Order [ECF No. 54], requesting the opportunity to file supplemental response and reply briefs after a pending mediation, the outcome of which might make further briefs unnecessary. The Court granted leave to file supplemental briefs on the Motion after mediation, if unsuccessful [ECF No. 56]. On February 15, 2011, the parties met for mediation, but did not reach a resolution. [ECF No. 66]. Therefore, the Plaintiff filed a Supplemental Response to Defendant Jody Selvage's Motion to Modify Temporary Restraining Order [ECF No. 70] on March 15, 2011, and the Defendant responded with Defendant Jody Selvage's Reply Brief in Support of His Motion to Modify the Temporary Restraining Order [ECF No. 82] on April 15, 2011.

**DISCUSSION**

Defendant Selvage has been enjoined from certain business activities for well over a year. Although the enforceability of his restrictive covenant is not yet before the Court, the basic legal principle that covenants not to compete are disfavored in law applies with force to this situation. *See Osler Inst., Inc. v. Forde*, 333 F.3d 832, 838 (7th Cir. 2003) ("Under Indiana law . . . covenants not to compete in employment agreements are disfavored and must be reasonably necessary to protect an employer's interests."); *Harvest Ins. Agency, Inc. v. Inter-Ocean Ins. Co.*, 492 N.E.2d 686, 688–89 (Ind. 1986) ("Covenants not to compete are in restraint of trade and are not favored by the law"; additionally, they are "deemed reasonable only where the restraint is reasonably necessary to protect the employer, is not unreasonably restrictive of the employee and is not against public

policy"); *F.W. Means & Co. v. Carstens*, 428 N.E.2d 251, 261 (Ind. Ct. App. 1981) ("Employment contracts containing covenants not to compete are in restraint of trade and therefore not favored in law."). Here the Plaintiff asks the Court to extend the provisions of the TRO as a form of injunctive relief. Bearing in mind that "[w]here there are no special or extenuating circumstances, injunctive relief beyond the terms of the restrictive covenant of an employment contract is not a proper remedy," *id.*, the Court declines to extend Paragraph 5 of the TRO. Although the Court agrees with the Plaintiff that Defendant Selvage has violated the terms of the TRO in part, the extreme remedy of extended injunctive relief is not appropriate.

### A. Violations of the TRO

By its own terms, the restrictive covenant signed by Defendant Selvage expired one year after he left employment with the Plaintiff. He terminated his employment on November 13, 2009, therefore the restrictive covenant was to run until November 12, 2010. Defendant Selvage admits he may have engaged in some conduct that is technically in violation of the restrictive covenant during the time between leaving employment with the Plaintiff and the entry of the TRO on December 8, 2009. (Defendant Jody Selvage's Reply Br. in Supp. of His Mot. to Modify the TRO at 5, ECF No. 82.) But that time period is not in issue on the Motion to Modify. The issue before the Court is whether to extend the TRO, and on its face it appears the Plaintiff has had the benefit of its bargain. From December 8, 2009, until the present, Defendant Selvage has been restrained by this Court's Order. The Plaintiff's restrictive covenant was to give the Plaintiff one year of compliance, but by the terms of the continuing TRO, the Plaintiff has now enjoyed more than eight additional months of compliance. On its face, Defendant Selvage's request to discontinue the TRO is reasonable.

The Plaintiff counters by arguing that Defendant Selvage has violated the TRO, and indeed has never been in compliance with the terms under which he was bound. As a remedy, the Plaintiff suggests that the Court issue a new restraining order to bind Defendant Selvage for one year from the date he begins complying with the restraining order. *See JAK Prods., Inc. v. Wiza*, 986 F.2d 1080 (7th Cir. 1993) (upholding a finding that a one-year restrictive employment covenant should be enforced for one year from the date of the injunction — in other words, one year from the date of compliance — instead of one year from the employment termination date). Concerning the alleged violations, the Plaintiff cites to *Marsh USA, Incorporated v. Karasaki*, No. 08 Civ. 4195(JGK), 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008), arguing that Defendant Selvage is violating the TRO under a theory of indirect selling, as articulated in *Marsh*.[1] For the reasons discussed below, the Court agrees in part, and disagrees in part, with the Plaintiff's analysis.

1.  **Marsh USA, Inc. v. Karasaki**

    The defendant in *Marsh* — Chad W. Karasaki — was an insurance company executive who had signed two restrictive employment covenants with the plaintiff, his former employer. *Id.* at *3–4. Immediately upon leaving employment with the plaintiff, Karasaki began working for a competitor insurance company and took substantial steps to solicit business and employees away from his former employer. *Id.* at *4–12. Although Karasaki did not personally meet with his former clients to convince them to do business with his new firm, he gave contact information to his new

---

[1] Neither the Plaintiff nor Defendant Selvage cites any authority from within the Seventh Circuit to show how Defendant Selvage's conduct does or does not violate the TRO. The Court finds the *Marsh* court's analysis persuasive and will apply it. *See also Corporate Expr. Office Prods., Inc. v. Brown*, No. 00-C-608-C, 00-C-666-C, 2001 WL 34381111, at *10 (W.D. Wis. July 18, 2001) (finding that former employee's level of involvement was the key issue on the question of whether former employee had indirectly violated his restrictive employment covenant).

employees and closely monitored communications between his new firm and his former clients, ensuring that his former clients were contacted and ensuring that his new firm solicited their business. *Id.* at *5–9. At issue before the court in *Marsh* was the plaintiff's request for a preliminary injunction, and in that context the court considered whether the plaintiff was likely to succeed on the merits in showing that Karasaki had violated the terms of his restrictive covenants. *Id.* at *19–20. Specifically, the court considered whether Karasaki's use of other employees at his new place of business to solicit business away from the plaintiff constituted indirect solicitation that would likely violate his restrictive covenants. The court found that it did:

> Karasaki maintains that because he did not directly participate in any of the meetings and did not initiate contact with any of his former clients, he did not violate the non-solicitation provision of the agreement with respect to clients. This argument, however, overlooks the facts that the [restrictive covenants] bar indirect as well as direct solicitation. It is plain that Karasaki played a central role in organizing the solicitation of his former clients. He indirectly solicited those clients by organizing others to attend the meetings and make the presentations, as he well knew he could not do so directly. The agreements prevented him from indirectly soliciting his prior clients and that is precisely what he did. He cannot escape liability simply because another Aon executive attended the meetings for him. Taking into account the evidence that third-parties solicited Karasaki's former Marsh clients using the lure of his name, that Karasaki closely managed the initiation, follow-up, and tracking of solicitation activity, and that he directly communicated with and prepared solicitation documents for at least one client, Marsh has shown a likelihood of success in proving that Karasaki has breached the non-solicitation provision of the agreements with respect to former Marsh clients.

*Id.* at *20. Because of Karasaki's active involvement in the solicitation of business from his former employer, the court found that he was likely indirectly soliciting business in violation of his covenants. Karasaki's situation is instructive — both for its similarities and its dissimilarities to Defendant Selvage's situation.

**2.    *Dupont Hospital***

Dupont Hospital is a local business formerly served by the Plaintiff, and serviced by Defendant Selvage when he worked for the Plaintiff. In April 2010, Dupont Hospital informed the Plaintiff that it had contracted with Defendant Selvage's new firm instead of the Plaintiff. Specifically, the hospital representative wrote: "I did award the service agreement to BTS. To be honest it was simply cost for service and knowing I was getting Jody [Selvage] as my primary serviceman pretty much sealed the deal." (Pl's Resp, Ex. 1, ECF No. 49–1.) It is undisputed that Dupont Hospital was one of the customers covered under Paragraph 5 of the TRO, meaning that Defendant Selvage was enjoined from directly or indirectly attempting to sell Dupont Hospital any goods or services competitive with those offered by the Plaintiff. The record further indicates that Paul Plazek — another Defendant and employee of BTS — told the hospital representative that Defendant Selvage was available to be the service technician if the hospital signed with BTS. (Plazek Dep. 198:3–199:1, ECF No. 78-3.) The Plaintiff alleges this understanding between Dupont Hospital and BTS meets the definition of indirect solicitation as outlined in *Marsh*. But given the distinct situations, the Court declines to read *Marsh* so broadly.

The *Marsh* court found it significant that Karasaki's employees solicited Karasaki's former clients, "using the lure of his name." *Marsh*, 2008 WL 4778239, at *20. But Karasaki's active participation in the indirect solicitation was equally important. *See id.* ("Karasaki closely managed the initiation, follow-up, and tracking of solicitation activity."). Here the Plaintiff has shown that another Defendant may have used Defendant Selvage's name as part of the lure to obtain Dupont Hospital's business. But there has been no indication that Defendant Selvage was in any way involved in that decision. Indeed, the records shows that Defendant Selvage did not identify Dupont as a customer for BTS, did not instruct Plazek to contact Dupont, did not draft a business proposal

8

for Dupont, and did not manage any necessary follow-up with Dupont. (Selvage Decl. ¶ 10, ECF No. 82-1.) Furthermore, Defendant Plazek states not that he volunteered Defendant Selvage's name in an attempt to get the contract, but that Dupont Hospital's representative *asked* if Defendant Selvage could do the work. (Plazek Dep. 198:20.) The facts before the Court indicate that it was Dupont Hospital that was attempting to buy Defendant Selvage's services, not Defendant Selvage in any way attempting to sell services to Dupont Hospital.

Under these facts, the Court finds that Defendant Selvage has not violated the TRO by indirectly attempting to sell services to Dupont Hospital. Absent even a minimal showing of active participation by Defendant Selvage, and given the statements before the Court, the Plaintiff's arguments fail.

**3.**     *June 7, 2010 Email*

On June 7, 2010, Defendant Selvage received an email from an operations officer at one of the Plaintiff's former clients.[2] (Pl.'s Supplemental Resp., Ex. 13, ECF No. 78-14.) The TRO enjoined Defendant Selvage from attempting to sell any goods or services to this client. The email is a request for services from the client to Defendant Selvage. The Plaintiff points to a later invoice showing that BTS — Defendant Selvage's employer — did in fact perform the services requested by the client. (Pl.'s Supplemental Resp., Ex. 14, ECF No. 78-15.) The Plaintiff argues that these facts substantiate an instance of indirect selling in violation of the TRO. The Court disagrees.

---

[2]The identity of the Plaintiff's former client and certain other details from the email are sealed pursuant to Court Order [ECF No. 75].

The email in question is a message *from* a customer to Defendant Selvage, not the other way around. Here the customer is soliciting Defendant Selvage for his business's services; Defendant Selvage is not shown to be actively pursuing this business opportunity in any way. The terms of the TRO enjoin Defendant Selvage from attempting to sell goods or services. But the TRO does not enjoin him from working when a customer attempts to buy goods or services. This is in stark contrast to Karasaki's actions in *Marsh*. There, Karasaki actively pursued business opportunities with former clients. *Marsh*, 2008 WL 4778239, at *5–9. Here, the evidence shows only that the customer actively pursued a business opportunity with Defendant Selvage. Under these facts, Defendant Selvage has not violated the TRO.

**4.**     *November 2010 Incident*

In his Declaration [ECF No. 82-1], Defendant Selvage admits that in November 2010, in the course of providing regular services for Dupont Hospital, he identified a business opportunity for BTS. The business opportunity was cleaning the tubes for three of Dupont Hospital's main chillers. (*Id.*) Defendant Selvage, because he had been instructed not to approach Dupont Hospital about additional business, passed this information along to John Gilbert — another named Defendant — who contacted Dupont Hospital about the service. (*Id.*) BTS ultimately performed the service, netting $1,940 in revenue. (*Id.*)

This conduct violates the TRO. The TRO enjoins Defendant Selvage, whether alone or in concert with others, and whether directly or indirectly, from attempting to sell to Dupont Hospital any goods or services competitive with those offered by the Plaintiff. Here, although Defendant Selvage did not directly mention this service opportunity to Dupont Hospital, he did take the lead

in ensuring that his new company would get the work. He contacted his fellow employee at BTS, who contacted Dupont Hospital, and the result was BTS obtaining business which otherwise could have been performed by the Plaintiff. Like Karasaki in *Marsh*, Defendant Selvage ensured the initiation of the business opportunity, and although he did not do it directly, he did it indirectly through the agency of another BTS employee. The TRO prohibits Defendant Selvage from doing indirectly what he knew he was enjoined from doing directly. Thus, his conduct violates the TRO.[3]

### 5. *January 2011 Incident*

Finally, in his Declaration, *id.,* Defendant Selvage also admits that in January 2011, in the course of providing regular services for Glenbrook Square Mall, he identified an additional business opportunity for BTS. The opportunity was maintenance needed to repair leaks on the mall's chillers. (*Id.*) Defendant Selvage again contacted Defendant Gilbert so that he would not have to directly approach Glenbrook Square Mall about the potential services. Defendant Gilbert did obtain the business for BTS, although as of the time of briefing the work had not yet been completed or invoiced. (*Id.*)

By the same reasoning as above, this conduct violates the TRO. Defendant Selvage was enjoined from attempting to sell services to Glenbrook Square Mall. He identified a business opportunity. Then, instead of approaching Glenbrook Square Mall directly about the potential

---

[3]Defendant Selvage argues that because his original restrictive covenant with the Plaintiff involved two clauses, both a restriction on selling and a restriction on providing services, yet the TRO only encompasses the restriction on selling, he cannot be found in violation of the TRO for what amounts only to providing services. (Def. Jody Selvage's Reply Br. at 6–8.) This argument is unavailing. While it is true that an employee could provide services without either directly or indirectly selling, it does not follow that an employee who provides services cannot also be selling. The question is whether Defendant Selvage has violated the TRO by indirectly selling. The Court concludes that he has.

11

business, he used another employee of BTS to accomplish the same thing. Defendant Selvage's conduct violates the TRO. As in *Marsh*, "[t]he agreement[] prevented him from indirectly soliciting his prior clients and that is precisely what he did." *Marsh*, 2008 WL 4778239, at *20. He solicited Glenbrook Square Mall indirectly, he obtained the business opportunity against the Plaintiff's interest, and he violated the terms of the TRO.

**B.     Remedy for Violation of the TRO**

Having established that Defendant Selvage was on two occasions in violation of the TRO,[4] the Court now considers an appropriate remedy. Employment covenants not to compete "restrain free trade and are not favored by Indiana's courts." *Franke v. Honeywell, Inc.*, 516 N.E.2d 1090, 1092 (Ind. Ct. App. 1987). Additionally, injunctive relief is "not intended to enlarge the plaintiff's rights." *Id.* Rather, "[w]here there are no special or extenuating circumstances, injunctive relief beyond the terms of the restrictive covenant of an employment contract is not a proper remedy." *Carstens,* 428 N.E.2d at 261.

The Plaintiff asks the Court to institute a new one-year restraining order against Defendant Selvage, with the one-year term to begin on the date he begins to abide by the terms of the TRO. The Plaintiff cites *JAK Productions, Incorporated v. Wiza*, 986 F.2d at 1090, for the principle that a restrictive covenant's term does not begin until the date of compliance. But that principle is unavailing here. In *Wiza*, the record showed that the defendant violated the restrictive covenant

---

[4]The Plaintiff spends considerable time arguing that service technicians like Defendant Selvage regularly engage in sales activities. (*See* Pl.'s Supplemental Resp. at 8–10.) This is not the issue. The question is not whether service technicians in general can engage in sales activities, the question is whether Defendant Selvage specifically violated the terms of the TRO by attempting to sell, either directly or indirectly, to certain customers. The evidence before the Court only proves two violations by Defendant Selvage.

continuously from the date of termination of employment until the date of the injunction. *Id.* Thus, the district court chose to begin crediting the defendant's compliance with the one-year covenant on the date of the injunction, and the Seventh Circuit affirmed. *Id.* at 1091. Defendant Selvage also admits that he engaged in technical violations of the restrictive covenant from the time of termination of employment until entry of the TRO.[5] And the facts before the Court indicate that, as in *Wiza*, Defendant Selvage did begin complying with the terms of the TRO when it was initially entered. Applying the logic of *Wiza,* the restrictive covenant's term begins on the TRO's start date — December 8, 2009. The Plaintiff has additionally shown that Defendant Selvage violated the terms of the TRO, but not until eleven months after he began complying.

Bearing in mind that the terms of the restrictive covenant require one year of compliance, the Court finds an additional one-year restraining order too harsh a remedy. Injunctive relief is "not intended to enlarge a plaintiff's rights." *Franke*, 516 N.E.2d at 1092. To grant an additional one year restraint upon free trade when the Plaintiff has already enjoyed the substantial benefit of the bargain —at least eleven months of compliance, not to mention compliance since early 2011 — would be to enlarge the Plaintiff's rights.[6] The Court finds that there are no "special or extenuating

---

[5]Although Defendant Selvage obviously does not admit, nor does the Court opine on, the enforceability of the restrictive covenant.

[6]The Plaintiff additionally cites to Illinois cases where restrictive covenants have been extended due to violations of the injunction by the former employee. *See Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1050 (N.D. Ill. 2009) (restrictive employment covenant extended due to violation of the injunction); *Prairie Eye Ctr., Ltd. v. Butler*, 768 N.E.2d 414, 424 (Ill. App. Ct. 2002) (extension of restrictive employment covenant due to violation of the injunction approved); *Vascular & Gen. Surgical Assocs., Ltd. v. Loiterman*, 599 N.E.2d 1246, 1253 (Ill. App. Ct. 1992) (same). But the Plaintiff ignores the logic of those decisions. The Illinois courts extended injunctions in order to give the plaintiffs the benefits of their bargains. *See Brown & Brown*, 592 F. Supp. 2d at 1050 (extending injunction because the defendant "depriv[ed] Brown of the benefit of the agreement during this period"); *Prairie Eye Ctr.*, 768 N.E.2d at 424 (extending injunction "to enforce the covenant not to compete for which Prairie bargained and did not receive"). Unlike these cases, the Plaintiff has already enjoyed the substantial benefit of the bargain and is not entitled to an extended injunction.

circumstances" that would justify ordering injunctive relief beyond the terms of the original covenant. *Carstens,* 428 N.E.2d at 261.

The Plaintiff has not shown why damages are an insufficient remedy for two isolated violations of the TRO. Accordingly, the Court denies the Plaintiff's request for extended injunctive relief and modifies the TRO as requested by Defendant Selvage.

**CONCLUSION**

The Stipulated Temporary Restraining Order, Paragraph 5, (a) through (d) inclusive, is hereby STRICKEN, and Defendant Jody Selvage's Motion to Modify Temporary Restraining Order [ECF No. 47] is GRANTED. In all other respects, the TRO remains in effect as set forth in ECF No. 21.

SO ORDERED on September 2, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT